# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOGERT ABRANTES and JOANNE GOSS, on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**FITNESS 19 LLC; SOCALEVOLUTION, LLC, FITNESS EVOLUTION FRANCHISING LLC; PLEASANTON FITNESS, and DOES 1-10, inclusive and each of them,**<br><br>Defendants. | 1:16-cv-00903-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS SOCALEVOLUTION LLC AND FITNESS EVOLUTION FRANCHISING LLC'S MOTION TO DISMISS (ECF No. 41)** |

## I. <u>PRELIMINARY STATEMENT TO PARTIES AND COUNSEL</u>

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to

1

suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. **INTRODUCTION**

Plaintiffs are former members of Fitness 19 gyms whose accounts were transferred to Fitness Evolution gyms in 2015 and 2016. Plaintiff Abrantes filed suit in June of 2016, on behalf of himself and a class of all similarly situated individuals, against Fitness Evolution for its alleged failure to comply with the provisions of the Electronic Funds Transfer Act ("EFTA") governing preauthorized electronic fund transfers when it automatically debited monthly membership fees. ECF No. 1. The initial Complaint named Fitness Evolution, LLC, an entity that apparently does not exist, as the sole defendant. The Complaint defined the putative class as follows:

> All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants without Defendants obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint.

Five months later, in late November of 2016, Plaintiff Abrantes filed a First Amended Complaint ("FAC"), adding a number of defendants, including Fitness 19 and its parent company; various individual gym locations and individuals associated with them; and Fitness Evolution's franchisor. ECF No. 7. These defendants were served with the FAC between January 24 and January 27, 2017. ECF No. 17 ¶ 4. The FAC also added Plaintiff Goss as a class representative. Her account was allegedly first debited by Fitness Evolution in September of 2015, within a year of the filing of the initial Complaint but more than a year before the filing of the FAC. The Plaintiffs then filed a Second Amended Complaint ("SAC") in May of 2017 that sought to name the correct defendants. ECF No. 23.

Defendants Socalevolution LLC ("Socalevolution"), the owner of the successor gym of which

2

Plaintiff Goss was a member, and Fitness Evolution Franchising LLC ("Franchising LLC"), the franchisor of the Fitness Evolution branches, moved to dismiss Plaintiff Goss's claims as outside the EFTA's one-year statute of limitations. ECF No. 41 ("Motion").

Defendant Franchising LLC also moved to dismiss all claims against it on the ground that Plaintiffs did not allege that it directly initiated the transactions at issue in this suit and therefore cannot have violated the EFTA. *Id*.

Plaintiffs opposed. ECF No. 44 ("Opp."). Defendants replied. ECF No. 45 ("Reply."). The matter was taken under submission on the papers pursuant to Local Rule 230(g).

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

The ETFA is a consumer protection law that seeks to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). The statute covers a range of electronic money transfers and "subjects them to a litany of procedural requirements designed to protect consumers from transactions made in error or without their consent." *Wike v. Vertrue, Inc.*, 566 F.3d 590, 592 (6th Cir. 2009) (citing 15 U.S.C. §§ 1693a(6), 1693b-1693f). It permits consumers to file money-damages actions for violations of its provisions and awards payment of attorneys' fees for successful suits. 15 U.S.C. § 1693m(a).

**A.** **Claim Against Franchising LLC**

The SAC alleges that Plaintiff Abrantes and Plaintiff Goss were members of separate gym facilities owned by Defendant Fitness 19, SAC ¶ 8, with which they each had authorized recurring monthly deductions from their accounts for membership fees, SAC ¶¶ 13, 14, 17. In or around January 2016, Plaintiff Abrantes's account was transferred to Pleasanton Fitness LLC ("Pleasanton Fitness"). SAC ¶¶ 15, 16. In or around September 25, 2015, Plaintiff Goss's account was transferred to Socalevolution. SAC ¶ 18. Following the transfers, Franchising LLC and franchisee Pleasanton Fitness deducted funds from Plaintiff Abrantes's account, and Franchising LLC and franchisee Socalevolution deducted funds from Plaintiff Goss's account. SAC ¶¶ 16, 18. Pleasanton Fitness and Socalevolution are the owners of the gyms that Plaintiffs visited, SAC ¶¶ 10-11, while Franchising LLC is the franchisor of Fitness Evolution gyms and provides to its franchisees, *inter alia,* "integrated billing and marketing, . . . branding, logos and secure trademarks, manuals, HR documents, [and] business plans," SAC ¶ 9.

Franchising LLC argues that these allegations fail to raise a reasonable inference that Franchising LLC deducted funds from the Plaintiffs' accounts. The SAC contains no allegation that Franchising LLC had any direct relationship with the Plaintiffs, who signed up at their individual gyms, or that Franchising LLC was otherwise in a position to deduct funds from the Plaintiffs' accounts. Motion at 6. Franchising LLC asserts that without further "factual enhancement," Plaintiffs' claims are nothing more than bare allegations that the franchisor was involved with the deductions at issue in this case and thus fail to state a claim under *Iqbal* and *Twombly*. *Id.* Plaintiffs respond that "[i]t is both plausible and reasonable to infer that a franchisor is responsible for both the policies and procedures" leading to unauthorized deductions and that the franchisor's having "provided the electronic funds transfer system that permitted such transfer[s] to occur" is adequate to state a claim that Franchising LLC "was involved with the specific withdrawals." Opp. at 9.

The term "preauthorized electronic fund transfer means an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). The EFTA defines an

"electronic fund transfer" as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." *Id.* § 1693a(7). The EFTA provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a); *see also* Regulation E, 12 C.F.R. § 205.10(b) ("Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."). The requirement that a preauthorized electronic fund transfer be in writing is further elaborated in the Official Staff Interpretations of Regulation E, which provide that "[t]he account-holding financial institution does not violate the regulation when a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer; rather, *it is the third-party payee* that is in violation of the regulation." 12 C.F.R. Pt. 205, Supp. I (emphasis supplied). In other words, EFTA liability does not attach to every participant involved in some way with violations related to preauthorized electronic fund transfers. *See, e.g., L.S. v. Webloyalty.com, Inc.*, 673 Fed. App'x 100, 106 n.5 (2d Cir. 2016) ("Appellant's EFTA claim against Visa was properly dismissed. Only the financial institution that is the custodian of the consumer's account or the recipient of the funds transfer can be subject to liability under the statute."). Only the third-party payee is liable for violations of § 1693e.

Pursuant to section 1693m, "any person who fails to comply with any provision of this title with respect to any consumer . . . is liable to such consumer." 15 U.S.C. § 1693m. Plaintiffs do not allege that Franchising LLC initiated any transfer or was itself the third-party payee; they only allege that it established policies and "provided the electronic funds transfer system that permitted such transfer[s] to occur." Opp. at 9. Indirect involvement of this nature is not enough to state a claim for a violation of EFTA's provisions governing preauthorized electronic funds transfers.

Other courts have declined to embrace an expansive reading of EFTA liability like the one that

Plaintiffs urge here. In *Van Tassell v. United Marketing Group, LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011), the plaintiffs brought EFTA claims relating to recurring electronic fund transfers against both the company that initiated the electronic funds transfer from the plaintiffs' accounts and a second company to which the first company then provided a plaintiff's debit card information. *Id*. at 784-85. Plaintiffs argued that a defendant "violates the EFTA where it interacts with a plaintiff by electronic means and ultimately begins (and is essential to) the process that leads to an unauthorized electronic fund transfer, regardless of whether the defendant or some co-actor actually removes the funds from the plaintiff's bank account." *Id*. at 785. The court rejected this broad interpretation, holding instead that because the second company was not alleged to have initiated any transfers, it was not liable under the EFTA. *Id.* Moreover, "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors," and in the absence of any indication in the text of the statute that Congress intended to capture liability for aiding and abetting, the court dismissed the EFTA claims premised on that liability. *Id*. (quoting *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 181–82 (1994)). *See also In re Easysaver Rewards Litig.,* 737 F. Supp. 2d 1159, 1181 (S.D. Cal. 2010) ("The Court concludes the EFTA does not reach those who aid and abet a statutory violation.").

Plaintiffs have not alleged sufficient facts to state a claim against Franchising LLC, and there is no liability for aiding and abetting EFTA violations. Accordingly, the motion to dismiss is GRANTED as to Franchising LLC.[1] Though the Court has doubts about the chances of success following amendment, Plaintiffs nevertheless will be afforded the opportunity to amend the complaint pursuant to Rule 15(a)(2).

**B.      Statute Of Limitations**

---

[1] Because the Court grants Franchising LLC's motion to dismiss, it does not consider the alternative argument in favor of summary judgment.

Both Socalevolution and Franchising LLC moved to dismiss Plaintiff Goss's claims as untimely. Having granted Franchising LLC's motion to dismiss on the separate issue that the facts alleged in the SAC failed to state a claim against it, the only remaining issue is whether Plaintiff Goss's claims against Socalevolution are time-barred.

Civil actions brought pursuant to the EFTA have a one-year statute of limitations. 15 U.S.C. § 1693m(g) ("Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."). Though the Ninth Circuit has not decided the issue, most courts have held that the one-year window to sue begins when the first recurring transfer took place and that subsequent transfers do not each create a new cause of action that resets the statute of limitations clock. In *Wike v. Vertrue*, 566 F.3d 590 (6th Cir. 2009), the district court had held that a preauthorized-transfer EFTA claim became ripe when the payee arranged for the preauthorized transfer. *Id*. at 592. The Sixth Circuit reversed, holding that "the one-year limitations period began when the first recurring transfer took place," not when it was arranged. *Id*. The court reasoned that "as a 'standard rule, the statute of limitations begins to run 'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain relief.' *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.,* 522 U.S. 192, 201 (1997) (internal quotation marks omitted). Customarily, that is true when the defendant breaches a duty (here a duty imposed by statute) and the claimant is injured." *Id*. at 593.

District courts have expanded on the Sixth Circuit's analysis in *Wike* to hold that the statute of limitations begins to run at the time of the first transfer and that subsequent transfers do not give rise to a new cause of action. In *Repay v. Bank of America, N.A.,* No. 12 CV 10228, 2013 WL 6224641 (N.D. Ill. Nov. 27, 2013), for instance, the court explained that the EFTA requires that "the payee must obtain a single written authorization for the entire series of transfers," rather than a separate written authorization for each transfer. *Id*. at *4. "Thus, once the series of transfers is initiated by the first

8

transfer, the violation occurs and Plaintiff is harmed. Put another way, rather than alleging a series of wrongful acts, Plaintiff has alleged a wrongful omission: failing to obtain written authorization for the series of transfers that were agreed upon and to provide a copy to the consumer." *Id*. (citing *Clark v. City of Braidwood,* 318 F.3d 764, 766 (7th Cir. 2003) ("[T]he continuing violation doctrine does not save an otherwise untimely suit when a single event gives rise to continuing injuries.")). *See also Harvey v. Google*, No. 15-CV-03590-EMC, 2015 WL 9268125, at *3 (N.D. Cal. Dec. 21, 2015) ("There is no applicable 'continuing violation' doctrine to save the claim from the time bar of EFTA if the first recurring transfer falls outside the limitations period, even if there are later transfers which do fall within the period."); *Camacho v. JPMorgan Chase Bank*, No. 5:14-CV-04048-EJD, 2015 WL 5262022 (N.D. Cal. Sept. 9, 2015) ("In cases involving unauthorized transfers, courts interpret § 1693m(g) to require that EFTA claims be filed within one year of the date of the first recurring transfer.").[2]

Plaintiffs do not argue that the statute of limitations is reset at each recurring transfer, and the Court accepts for purposes of this motion that Defendants' interpretation of 1693m(g) is correct. Plaintiffs instead argue that as a member of the putative class whose claims arose within one year of the filing of the Complaint, Plaintiff Goss's claims were tolled once the original Complaint was filed. Opp. at 6.

*American Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974), held that commencement of a class action suspends the statute of limitation as to all putative members of the class up to and until class certification is denied or the plaintiff opts out of the class. *Id.* at 554; *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir.2008); *Emp'rs–Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 925 (9th Cir. 2007). The Supreme Court has explained that applying equitable tolling in the class action context is consistent with the principles underlying a statute of

---

[2] At least one court has held that each recurring transfer, not just the first in the series, gives rise to an EFTA claim. *Diviacchi v. Affinion Grp., Inc.*, No. CIV.A. 14-10283-IT, 2015 WL 3631605, at *10 (D. Mass. Mar. 11, 2015) ("Each transfer constitutes a new harm above and beyond the prior harm of a prior transfer and it amounts to an independent violation of section 1693e."), *report and recommendation adopted*, No. 14-CV-10283-IT, 2015 WL 3633522 (D. Mass. June 4, 2015).

9

limitations. Tolling would not serve to unfairly extend the statute of limitations for plaintiffs, for "[c]lass members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims." *Crown, Cork & Seal v. Parker,* 462 U.S. 345, 352-53 (1983). Tolling also does not prejudice defendants, because they are on notice of the claims against them:

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428 [(1965)], are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. *Within the period set by the statute of limitations*, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*American Pipe*, 414 U.S. at 554-55 (emphasis supplied). The filing of a class action does not, however, toll claims against defendants who could have been sued but were not. *Cf. Hunsaker v. Hurwitz*, 14 F. App'x 826, 830 (9th Cir. 2001) (where class representatives in one action failed to serve process on certain defendants, absent class members' claims against those defendants in later class action are not subject to *American Pipe* tolling).

Plaintiffs argue that Plaintiff Abrantes was a member of the putative class in the original Complaint, which sought to represent a nationwide class of members of Fitness Evolution gyms whose accounts were debited on a recurring basis without written authorization, such that her claims were tolled pursuant to *American Pipe*. Plaintiff Goss's claims, they assert, thus "relate back to the original filing date of the Complaint" and are timely. Opp. at 5. Defendants respond that *American Pipe* tolling does not apply to newly added defendants, Motion at 4, and because Plaintiff Goss was not added as a class representative and the company that owned the gym facility to which she belonged was not added as a defendant until after the statute of limitations on her claim had run, her claim is time-barred.

"An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to

the date of a timely original pleading." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). "Rule 15(c) of the Federal Rules of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 541 (2010). Rule 15(c) provides instances where a pleading relates back to the date of an original pleading if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence" in the original pleading, and if

> *within the period provided by Rule 4(m)* for serving the summons and complaint, the party being brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity.

Fed. R. Civ. P. 15(c)(1)(B), (C) (emphasis supplied).

The original Complaint sought to represent a putative class consisting of "[a]ll persons in the United States whose bank accounts were debited on a reoccurring basis by [Fitness Evolution, LLC] without [Fitness Evolution, LLC] obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint." ECF No. 1 at 4. As a member of a Fitness Evolution gym whose account was first debited within one year of the filing of the original Complaint, Plaintiff Goss's claims "arose out of the conduct, transaction, or occurrence" in the original pleading and therefore satisfy the first requirement of Rule 15(c). Fed. R. Civ. P. 15(c)(1)(B).

In order for the untimely addition of Socalevolution to relate back to the initial Complaint, Plaintiffs must show that Socalevolution had notice of the original Complaint "within the period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C); *Krupski*, 560 U.S. at 554 n.5. "That notice need not be manifested by formal service of process within the

prescribed period," but it requires, at a minimum, "knowledge of the filing of suit." *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 26 (1st Cir. 2009). That knowledge may be imputed where there is a "sufficient community of interest" between the named and added parties, meaning that "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other," *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (quotation marks and internal citation omitted), or where the parties share an attorney, *Krupski*, 130 U.S. at 544.[3]

Though their opposition asserts that the FAC and SAC relate back to the original Complaint, Plaintiffs fail to provide any indication that defendant Socalevolution was on notice of the suit within the 90 days afforded by Rule 4(m). Fed. R. Civ. P. 4(m). Plaintiff Abrantes filed the initial Complaint on June 23, 2016, naming Fitness Evolution, LLC as the lone defendant. ECF No. 1. This entity, according to Defendants, "does not exist." Motion at 1. Plaintiffs then filed the First Amended Complaint over five months later, on November 28, 2016, including for the first time Plaintiff Goss and the defendants at issue here. ECF No. 7. The defendants were served nearly two months after the filing of the FAC, between January 24 and January 27, 2017. ECF No. 17 ¶ 4. The record is bare of any fact to suggest that Socalevolution had actual or constructive knowledge of this suit within the period permitted under Rule 4(m).

Both *American Pipe* tolling and relation back under Federal Rule of Civil Procedure 15(c) are rooted in a defendant having notice of the claims at issue. "[A] plaintiff has the burden of locating and suing the proper defendant within the applicable limitations period. The Federal Rules do not demand a

---

[3] As noted above, Plaintiffs would additionally need to demonstrate that once Socalevolution had notice of the suit, it knew or should have known that it would have been named as a defendant in the original Complaint, "but for a mistake concerning the party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). *See, e.g., Krupski*, 560 U.S. at 555-56 (where a plaintiff's complaint indicated that she "meant to sue the company that 'owned, operated, managed, supervised and controlled' the ship on which she was injured" and believed the named defendant to perform those roles, then a "related corporate entitit[y] with [a] very similar name[]" that was added later should have known that it would have been the defendant but for a mistake concerning identity) (citing *Morel v. DaimlerChrysler AG,* 565 F.3d 20, 27 (1st Cir. 2009) and *Goodman v. Praxair, Inc.,* 494 F.3d 458, 473–475 (4th Cir. 2007) (en banc)).

perfect effort at the outset, but they do demand that when an amendment seeks to correct an imperfect effort by changing parties, the new party must have received adequate notice within the limitations period and suffer no prejudice in its defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 473 (4th Cir. 2007) (en banc). Plaintiffs have not shown that Socalevolution received notice within the period prescribed by Rule 4(m) and therefore have not demonstrated that Plaintiff Goss's claims relate back to the original Complaint.

Plaintiffs argue in the alternative that Plaintiff Goss's claims are timely because the SAC made additional allegations concerning a withdrawal from her account on or around July 7, 2016, after she had canceled her membership agreement with the Fitness Evolution facility to which she had belonged. SAC ¶¶ 19-21. Plaintiffs argue that "this post-cancellation withdrawal triggers a violation of EFTA" because it was made without a written authorization for preauthorized electronic fund transfers and is thus "similar to the claims of the other members of the Class." Opp. at 8. The Court disagrees. The putative class is defined to include persons "whose bank accounts were debited on a *reoccurring basis* . . . without Defendants obtaining a written authorization . . . for preauthorized electronic fund transfers." SAC ¶ 26. As discussed, to the extent that the post-cancellation deduction in July 2016 was merely an extension of a pattern of unauthorized withdrawals that began in September 2015, it was the first withdrawal in September 2015 that gives rise to any cause of action. To the extent that the July 2016 withdrawal can be distinguished from the alleged pattern of unauthorized withdrawals that began in 2015, Plaintiff Goss's one-time post-cancellation deduction falls outside the class definition. Moreover, it is not clear how any such independent, one-time withdrawal could constitute an EFTA violation under 15 U.S.C. 1693a(10), which defines a preauthorized electronic fund transfer as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

Accordingly, defendant Socalevolution's motion to dismiss Plaintiff Goss's claims against Socalevolution as barred by the statute of limitations is GRANTED WITH LEAVE TO AMEND.

## V. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, Franchising LLC's motion to dismiss is GRANTED WITH LEAVE TO AMEND and Socalevolution's motion to dismiss is GRANTED WITH LEAVE TO AMEND. Any amended complaint shall be filed on or before October 5, 2017. Both shall pay close attention to this Order. This Court's resources are limited. The amended pleadings, if filed timely, will be considered to be the best the parties can present.

IT IS SO ORDERED.

Dated: **September 14, 2017**     **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE